United States District Court
District of Massachusetts

```
                                )
DINA POSADA,                    )
                                )
        Plaintiff,              )
                                )
        v.                      )   Civil Action No.
                                )   18-10989-NMG
ACP FACILITY SERVICES, INC.,    )
MIKE WHITE and JESUS RONQUILLO, )
                                )
        Defendants.             )
                                )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from claims of employment discrimination brought by Dina Posada ("Posada" or "plaintiff"), a former employee of the defendant corporation, ACP Facility Services, Inc. ("ACP"). Posada alleges that ACP, Mike White, ACP's Chief Operating Officer ("COO") ("White") and Jesus Ronquillo, plaintiff's direct supervisor ("Ronquillo") (collectively "defendants"), discriminated against her on the basis of sex and race which ultimately caused her to terminate her employment with ACP. She now brings both federal and state law claims for hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and M.G.L. c. 151B, § 4 ("Chapter 151B").

-1-

Before the Court are defendants' motion to dismiss the amended complaint (Docket No. 20) and plaintiff's motion to strike the affidavits and exhibits attached to that motion to dismiss (Docket No. 23).  For the reasons that follow, those motions will be allowed, in part, and denied, in part.

I. **Motion to Strike**

There is a dispute as to which documents this Court may consider in ruling on defendants' motion to dismiss.  The standard rule is that a court may not consider, in ruling on a motion to dismiss, documents that are neither attached to nor expressly incorporated in the complaint unless the motion is converted into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  The court may, however, consider 1) documents the authenticity of which are not disputed by the parties, 2) official public records, 3) documents central to the plaintiff's claim and 4) documents sufficiently referred to in the complaint. Id. at 3-4 (collecting cases).

Posada contends that the affidavits of Ronquillo and White submitted in support of defendants' motion to dismiss and the exhibits attached thereto cannot be considered by the Court and thus must be stricken.  The Court agrees that neither of the affidavits submitted by defendants can be considered on a motion to dismiss because they assert facts not alleged in the amended complaint and do not fall within the exceptions noted above.

Nor will the Court consider 1) any of the internal documents of ACP attached as exhibits to those affidavits because they are not expressly incorporated in the amended complaint or sufficiently referred to therein, or 2) the emails allegedly sent by Posada to White, Ronquillo and other employees of ACP because those emails were never mentioned in the amended complaint or attached thereto.

The Court will, however, consider the decisions of the following agencies rendered in connection with this case: 1) the Department of Unemployment Assistance affirming the denial of Posada's claim for unemployment insurance benefits, 2) the Massachusetts Commission Against Discrimination ("the MCAD") denying her claim of employment discrimination for lack of probable cause and 3) the Equal Employment Opportunity Commission ("the EEOC") summarily adopting the findings of the MCAD and dismissing plaintiff's claim of discrimination. All of those documents are official public records which can be considered on a motion to dismiss.

Accordingly, plaintiff's motion to strike will be allowed, in part, and denied, in part.

## II. **Background**

### A. **The Facts**

Posada is a woman of Salvadoran descent who lives in Somerville, Massachusetts. She had experience in the cleaning

industry prior to her employment by ACP, a corporation with its principal place of business in Woburn, Massachusetts. ACP provides cleaning, maintenance and other services for commercial offices and buildings. White is the COO and Ronquillo the current Vice President of Operations who was Posada's direct supervisor during the relevant period. White also had supervisory authority over Posada.

Posada was hired as a manager by ACP in or about March, 2015. Shortly thereafter, she and another female employee began training for new employees. Posada alleges that the other female employee left the training almost immediately "based upon her treatment" but does not describe that treatment. Posada completed the training but, without elaborating, claims that she was treated differently than the male managers because she was a woman who was hired over at least one other male employee and was resented by other male employees as a result.

One employee, identified in the amended complaint as "Mr. Alvarado" ("Alvarado"), allegedly threatened and intimidated Posada, warning her that "she better watch out". She allegedly reported those threats to Ronquillo and was afraid to go into the parking garage when Alvarado was around but no action was taken. Ronquillo allegedly told her that "all women just make stuff up" and made comments about her personal life and her

boyfriend in front of her co-workers which were intended to humiliate her.

At some point during her employment, Ronquillo assigned Posada a project with an unrealistic deadline. When she complained, he simply ignored her. She claims that she worked on the project but never received any feedback. Posada submits that no other managers were assigned similar projects and that she was given the project as a pretext for firing her when she failed to meet the assigned deadline. Furthermore, she alleges that at some point while working on the project, she left work for a family emergency and notified the appropriate person at ACP of her absence. Ronquillo allegedly confronted that female employee and berated her for Posada's purported failure to follow protocol. Posada believes the female employee has since left ACP.

In August, 2015, a day after the deadline for the project, White and Ronquillo scheduled a meeting with Posada to discuss her failure to complete the assignment. She felt there was no reason for the COO to be present at that meeting and thus concluded that her supervisors were targeting her merely because she was a woman. Posada says that at that meeting, White and Ronquillo verbally attacked her but adds no specifics. Posada "just wanted to get out of the situation" and thus she told them she would give a 30-day or two-week notice of resignation. She

was allegedly told, however, to leave immediately.  She contends that Alvarado was permitted to give a two-week notice before he left the company and that other male employees were allowed to give notice before terminating their employment.  Posada concludes that White and Ronquillo intended to coerce her into resigning at the meeting.

Posada avers that as a result of the above described misconduct, she has suffered severe emotional distress and lost wages.

**B.   Procedural History**

In September, 2015, Posada filed a claim for unemployment benefits.  After a hearing, the Department of Unemployment Assistance denied Posada's claim, finding that she had left work voluntarily without good cause attributable to the employer.  That denial of benefits was affirmed on appeal.

At some point after the termination of her employment with ACP, Posada filed a claim with the MCAD for employment discrimination on the basis of sex.  In that complaint, she alleged hostile work environment and retaliation.  The MCAD found a lack of probable cause on both counts and dismissed her claim.  That decision was affirmed on appeal in April, 2017.  In February, 2018, the EEOC adopted the findings of the MCAD and dismissed the claim.

In May, 2018, Posada filed a complaint pro se in this Court for employment discrimination under Title VII and Chapter 151B. In February, 2019, she filed an amended complaint through counsel in which she alleges that she was subject to a hostile work environment and retaliation because of her sex and race. She submits that the misconduct of defendants effectively coerced her into resigning from ACP.

Shortly after the filing of the amended complaint, defendants filed a motion to dismiss. They assert that: 1) there is no individual liability for supervisors and co-workers under Title VII and thus the federal claims against White and Ronquillo must be dismissed; 2) plaintiff has failed to allege facts sufficient to state either federal or state law claims for sex discrimination under the theories of either hostile work environment or retaliation; 3) she has failed to allege facts sufficient to establish individual liability for either White or Ronquillo under Massachusetts law; and 4) she has failed to exhaust her administrative remedies with respect to her new claims for race discrimination and thus those claims must be dismissed.

III. **Motion to Dismiss**

   A. **Legal Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**B.    Employment Discrimination**

**1.    Legal Standard**

Both Title VII and Chapter 151B prohibit employers from discriminating against their employees on the basis of sex or race. 42 U.S.C. § 2000e-2(a)(1); M.G.L. c. 151B, § 4. Under Title VII, there is no liability for individual employees who engage in discriminatory conduct but rather there is only liability for the employer itself. Fantini v. Salem State Coll., 557 F.3d 22, 30-31 (1st Cir. 2009). Under Massachusetts law, however, an individual employee may be held liable for conduct

that interferes with rights protected under Chapter 151B. See Beaupre v. Cliff Smith & Assocs., 738 N.E.2d 753, 764-65, 764 n.16, 765 n.19 (Mass. App. Ct. 2000) (citing M.G.L. c. 151B, § 4(1), (4), (4A), (5), (16A), and collecting cases).

Those provisions may be violated by subjecting an employee to an abusive or hostile work environment. Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (citing Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)). To establish a claim for hostile work environment, a plaintiff must show

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual [or racial] harassment; (3) that the harassment was based upon sex [or race]; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually [or racially] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Ponte v. Steelcase, Inc., 741 F.3d 310, 320 (1st Cir. 2014); see also id. at 319 n.9 (acknowledging that the same legal standard applies to claims for hostile work environment brought under both federal and state law).

In assessing whether a work environment is sufficiently hostile or abusive, courts must consider the totality of the circumstances, including 1) "the frequency of the discriminatory

conduct", 2) "its severity", 3) "whether it is physically threatening or humiliating, or a mere offensive utterance" and 4) "whether it unreasonably interferes with an employee's work performance". Harris, 510 U.S. at 23. A single, isolated incident of harassment is ordinarily insufficient to establish a claim for hostile work environment unless the incident was particularly egregious. Compare Ponte, 741 F.3d at 320 (finding that two incidents of inappropriate physical contact was insufficient to establish a hostile work environment), and Pomales v. Celulares, 447 F.3d 79, 83-84 (1st Cir. 2006) (holding that a single incident of nonphysical harassing conduct was insufficient to establish a claim for hostile work environment), with Gerald v. Univ. of P.R., 707 F.3d 7, 18 (1st Cir. 2013) (holding that a single incident of physical sexual assault was sufficiently egregious on its own to demonstrate a claim for hostile work environment). The accumulated effect of numerous offensive comments can constitute a hostile work environment. Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 40 (1st Cir. 2011).

Under Title VII, when a supervisor is responsible for creating a hostile work environment, the employer is vicariously liable for the supervisor's misconduct unless a specific affirmative defense applies. Noviello v. City of Bos., 398 F.3d 76, 94-95 (1st Cir. 2005) (explaining the elements of the

affirmative defense).  Chapter 151B, however, provides no affirmative defense to an employer's vicarious liability for the hostile work environment created by supervisors.  Id. at 95 (citing College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 508 N.E.2d 587, 591-94 (Mass. 1987)).

Under both Title VII and Chapter 151B, when a co-worker (rather than a supervisor) is responsible for creating a hostile work environment, the employer is liable for the co-worker's misconduct only if the harassment is causally connected to the employer's negligence.  Id. at 95 ("Typically, this involves a showing that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it.").

In addition to proscribing workplace harassment, Title VII and Chapter 151B also prohibit an employer from retaliating against an employee for opposing an unlawful employment practice, such as by filing a complaint. 42 U.S.C. § 2000e-3(a); M.G.L. c. 151B, § 4.  To establish a prima facie claim for retaliation, the plaintiff must show that 1) she engaged in protected conduct, 2) she was subjected to an adverse employment action and 3) there was a causal connection between the protected conduct and the subsequent adverse employment action. Valentin-Almeyda, 447 F.3d at 94 (citing Noviello, 398 F.3d at 88).

An employment action is adverse if it would have dissuaded a reasonable worker from engaging in protected activity, such as making a charge of discrimination. Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 284-85 (1st Cir. 2014). Being assigned disparate work from similarly situated co-workers can constitute an adverse employment action in support of a retaliation claim. See id. at 285-86 (collecting cases). Moreover, under Chapter VII (and likely under Chapter 151B as well), subjecting an employee to a hostile work environment can constitute an adverse employment action for purposes of a retaliation claim. Noviello, 398 F.3d at 89-91. To prove retaliation in the form of a hostile work environment, however, the plaintiff must still establish all the elements for a hostile work environment claim. See id. at 89.

To prevail on a retaliation claim, the plaintiff must also establish a but-for causal connection between the protected activity and the adverse employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). Mere temporal proximity between the plaintiff's complaint and the subsequent adverse action is usually not enough to establish a causal connection unless the plaintiff can also prove that the individual knew of the protected conduct when he or she engaged in the adverse action. Pomales, 447 F.3d at 85.

While the plaintiff must ultimately prove all of the elements of her claims for hostile work environment and/or retaliation in order to prevail, the initial burden of demonstrating a claim of discrimination is not intended to be onerous and the plaintiff need not establish every element of the prima facie case at the pleading stage. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (as applied to claim under Title VII); Sullivan v. Liberty Mut. Ins. Co., 825 N.E.2d 522, 530 (Mass. 2005) (as applied to claim under Chapter 151B); see also Rodriguez-Vives, 743 F.3d at 286.

   **2. Application**

As an initial matter, Posada has not exhausted her administrative remedies with respect to her claims for race discrimination. Both Title VII and Chapter 151B require an employee to exhaust the administrative process before filing a civil suit in court and failure to do so normally precludes the filing of that claim. Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005) (as applied to claims under Title VII); Everett v. 357 Corp., 904 N.E.2d 733, 746-47 (Mass. 2009) (as applied to claims under Chapter 151B). The requirement of exhaustion is excused, however, where the plaintiff can demonstrate that the claims set forth in the civil complaint are based on acts of discrimination that could reasonably be expected to have been discovered by the MCAD or the EEOC during the course of their

investigation of the administrative claim. Everett, 904 N.E.2d at 748 (citing Powers v. Grinnell Corp., 915 F.2d 34, 39 (1st Cir. 1990)).

Posada did not raise her claims of race discrimination in her complaint to the MCAD or the EEOC. Indeed, the MCAD in its decision dismissing Posada's claim of discrimination did not mention allegations of race discrimination but rather limited its discussion to sex discrimination. Nor has plaintiff demonstrated that the MCAD or the EEOC was reasonably likely to discover potential race discrimination during their investigations, given that she did not mention it in her administrative complaint. See Patoski v. Jackson, 477 F. Supp. 2d 361, 363-64 (D. Mass. 2007) ("It cannot be assumed that EEOC investigations are designed as fishing expeditions to uncover all possible transgressions, especially if not alleged."). Accordingly, plaintiff has failed to exhaust her administrative remedies with respect to her claims for race discrimination and thus those claims will be dismissed.

Furthermore, plaintiff concedes, as she must, that White and Ronquillo cannot be held personally liable under Title VII. The claims asserting individual liability against them under Title VII will therefore also be dismissed.

With respect to the remaining claims, Posada has alleged enough facts to state plausible claims for both hostile work

environment and retaliation against ACP under both Title VII and Chapter 151B and against White and Ronquillo personally under Chapter 151B.  While Posada provides few details of how she was threatened or harassed by her co-workers and supervisors, the Court need not assume at the pleading stage that the complaint lays out a fixed set of facts in support of her claims of discrimination.  Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002).  Nor is she required to establish every element of the prima facie case at this stage.  Rodriguez-Vives, 743 F.3d at 286.  Further facts in support of her claims of discrimination may be developed later through discovery.

Posada has stated a plausible claim for hostile work environment based on the alleged threatening and intimidating conduct of Alvarado and the comments made and disparate work assigned by Ronquillo.  The alleged threats made by Alvarado, if sufficiently egregious, can alone constitute a hostile work environment.  Even if those threats alone were not sufficiently severe or pervasive, the cumulative effect of that intimidation, combined with the conduct of Ronquillo, can have been severe enough for purposes of a hostile work environment claim.  It is also plausible that the alleged conduct was both objectively and subjectively offensive because a reasonable person would feel intimidated by threats of a co-worker and humiliated and

demeaned by embarrassing comments made or disparate work assigned by a supervisor.

Furthermore, Posada has alleged facts sufficient to support vicarious liability of ACP on the basis of the conduct of Alvarado and Ronquillo. Posada allegedly reported Alvarado's misconduct to Ronquillo who apparently did nothing to address the harassment. Instead, he allegedly engaged in his own discriminatory conduct thereafter. It is a reasonable inference that ACP knew, or should have known, about Alvarado's misconduct (especially after Posada reported it to her direct supervisor) and thus it is plausible that ACP is liable for Alvarado's misconduct as a co-worker under both Title VII and Chapter 151B. ACP can also be held vicariously liable under both statutes for the alleged misconduct of Ronquillo as Posada's supervisor.

Moreover, Posada has stated a plausible claim for retaliation. She alleges that she reported Alvarado for sexual harassment and that Ronquillo failed to take any action. Rather, he assigned her a project to complete within an unrealistic deadline. After she failed to complete the project, she was allegedly verbally attacked by both Ronquillo and White which ultimately compelled her to resign. It is reasonable to infer that Ronquillo and White assigned Posada the subject project in retaliation for her reporting the misconduct of a male co-worker and that they were using the project as a pretext

-16-

for disciplining her or forcing her to resign.  It is also plausible that Ronquillo subjected Posada to a hostile work environment (by making embarrassing comments about her personal life in front of her co-workers) in retaliation for her protected conduct.

For the same reasons that Posada has stated a plausible claim as to ACP on the basis of the alleged misconduct of Ronquillo and White, she has also stated plausible claims against both Ronquillo and White personally under Chapter 151B. While the allegations as to White are weaker, it is plausible that he was aware of and complicit in Ronquillo's alleged retaliatory misconduct.  Furthermore, Posada alleges that both Ronquillo and White verbally attacked her and that neither of them permitted her to give two-weeks notice before resigning. Those facts support an inference that White and Ronquillo were colluding either to fire her or to force her to resign.

Finally, the Court notes that, while Posada has not specifically raised a claim for constructive discharge in her amended complaint, she has alleged facts that plausibly support such a claim.  To establish a claim for constructive discharge, the plaintiff must demonstrate that she was subjected to conditions "so severe and oppressive" that a reasonable person in that position would have been compelled to resign. Ara v. Tedeschi Food Shops, Inc., 794 F. Supp. 2d 259, 264 (D. Mass.

2011) (quoting Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003)). Such a claim is likely dependent upon Posada's claims of hostile work environment.

### ORDER

For the foregoing reasons,

1) plaintiff's motion to strike the affidavits and exhibits attached to the motion to dismiss (Docket No. 23) is, with respect to the decisions of the Department of Unemployment Assistance, the MCAD and the EEOC, **DENIED** but is otherwise **ALLOWED**; and

2) defendants' motion to dismiss the amended complaint (Docket No. 20) is, with respect to plaintiff's claims for race discrimination under Title VII and Chapter 151B and her claims against White and Ronquillo personally under Title VII, **ALLOWED** but is otherwise **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 29, 2019